**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JORDAN McELROY, an individual;  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )    Case No. _____<br>  )<br>GENUINE PARTS COMPANY, INC., d/b/a  )    Lower Court Case<br>NAPA AUTO PARTS, a corporation,  )     No. 22-07049-CZ<br>  )<br>    Defendant.  )<br>  )<br>_____  ) | |

**NOTICE AND PETITION OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

COMES NOW Genuine Parts Company d/b/a NAPA Auto Parts (misidentified as "Genuine Parts Company, Inc. d/b/a NAPA Auto Parts" in the Complaint) (hereinafter "GPC" or "Defendant"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby removes this action from the Circuit Court for the County of Kent, State of Michigan, where it is now pending, to the United States District Court for the Western District of Michigan. GPC states as follows in support of its Notice and Petition of Removal:

1. On or about August 4, 2022, Plaintiff Jordan McElroy ("Plaintiff") filed a lawsuit in the Circuit Court for the County of Kent, State of Michigan, Case No. 22-07049-CZ, against GPC (the "State Court Action").

2. On August 9, 2022, GPC received a copy of the Summons and Complaint and Jury Demand in the State Court Action. A true and correct copy of all pleadings, process, and other papers and exhibits of every kind filed in the State Court Action are attached hereto as **Exhibit 1**.

3. Exhibit 1 constitutes all processes, pleadings and orders that have been received by GPC in the State Court Action prior to filing this Notice and Petition of Removal.

1

4. This Notice and Petition of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed less than one year from the date this action was commenced and within thirty (30) days after the action became removable, that is after GPC was provided a copy of the Summons and Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing Inc.,* 526 U.S. 344, 347-48 (1999) (holding that 30-day deadline to remove commences upon service of the summons and complaint).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1441(a) because the Superior Court where the removed case was pending is located within this District.

6. GPC is the only named defendant, and, thus, there are no other named defendants who have been served who have not consented to the removal of the action.

7. Promptly after filing this Notice and Petition of Removal, GPC will serve by mail a copy of the Notice and Petition of Removal upon Plaintiff (via Plaintiff's counsel of record). A Notice of Filing Notice and Petition of Removal is being promptly filed with the Circuit Court for the County of Kent, State of Michigan, pursuant to 28 U.S.C. § 1446(d).

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) in that it is a civil action between citizens of different states as more fully shown below, and because the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

9. For diversity purposes, a person is a "citizen" of the state in which he is domiciled (28 U.S.C. § 1332(a)(1)), and a corporation "shall be deemed a citizen of any State in which it is incorporated and of the State where it has its principal place of business (28 U.S.C. § 1332(c)(1))." *Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279 (6th Cir. 1990). The United States Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010) clarified that a

corporation's principal place of business is "the place where a corporation's officers direct, control and coordinate the corporation's activities," which should "normally be the place where the corporation maintains its headquarters."

    10.    Complete diversity exists between the parties because:

        a)    Plaintiff resides in Kent County, Michigan and is a citizen of the State of Michigan. (Compl. ¶ 2).

        b)    GPC was and is a corporation incorporated in the State of Georgia with its principal place of business in Georgia. (*See* Declaration of Quyen Clifton in support of Notice of Removal ("Clifton Decl.") at ¶ 3). GPC is not a corporation incorporated in the State of Michigan. (*Ibid.*) In fact, in his Complaint, Plaintiff acknowledges that GPC is "headquartered in Atlanta, Georgia." (Compl. ¶ 3)

    11.    Although Plaintiff's Complaint does not state the amount in controversy, the nature and type of relief sought in the Complaint makes clear that the amount in controversy exceeds $75,000. In the Sixth Circuit, where an unspecified amount in controversy has been pled in state court, removal is proper when the defendant shows that the amount in controversy "may" or "could" exceed $75,000 by a preponderance of the evidence based on the allegations in the Complaint. *See Gafford v. Gen. Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (establishing preponderance of the evidence standard for amount in controversy); *National Nail Corp. v. Moore*, 139 F. Supp. 2d 848, 850 (W.D. Mich. 2001) (noting amount in controversy is determined by allegations in complaint). In other words, the issue is not whether the damages are proven to be greater than the requisite amount, but whether a factfinder "could" conclude that plaintiff's "potential" damages exceed $75,000 based on the relief requested in the Complaint. *See Id.* In

determining the amount in controversy, all the damages sought by the plaintiff are considered, including actual damages, punitive damages and attorneys' fees. *See Id.*; *see also Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369 (6th Cir. 2007) (holding statutorily authorized attorneys' fees must be considered in determining whether amount in controversy requirement has been met); *Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro,* 129 Fed. Appx. 194, 195 (6th Cir. 2005) (holding potential cost of lawsuit for amount in controversy purposes included compensation for mental anguish, lost income, attorneys' fees and punitive damages); *Hayes v. Equitable Energy Resources Co.,* 266 F.3d 560, 572-73 (6th Cir. 2001) (considering request for punitive damages in determining whether amount in controversy requirement was satisfied).

12. The Complaint alleges retaliation in violation of the Elliott-Larsen Civil Rights Act (hereinafter "ELCRA"). In his Prayer for Relief, Plaintiff alleges and seeks damages, including, but not limited to: (1) "economic and compensatory damages in an amount that would fully compensate Plaintiff for the injuries alleged herein, including damages for mental anguish and emotional distress," "lost earnings and benefits and future earnings and benefits," "unfair reputational damage, and undue harm to his career;" (2) "punitive damages;"[1] (3) "costs and reasonable attorneys' fees;" (4) "reinstate[ment] to his employment position with [GPC];" and (5) "such other relief as may be just and equitable." (Compl. ¶¶ 25, 26 (A-E)

---

[1] Punitive damages have not been included in the amount in controversy analysis herein because the ELCRA does not provide for an award of punitive damages, and, hence, they cannot be recovered. *See Gilbert v. Daimler Chrysler Corp.*, 470 Mich. 749, 765 (2004) (citing *ELCRA,* Mich. Comp. Laws § 37.2801(3)); *Shupe v. Asplundh Tree Expert Co.*, 566 Fed.Appx. 476, 479 ("Claims for punitive damages should be included in the amount-in-controversy, 'unless it is apparent to a legal certainty that such cannot be recovered.'")

13. Considering Plaintiff's Complaint as a whole and more specifically in the context of the ELCRA, a preponderance of the evidence establishes that the amount in controversy exceeds the $75,000 statutory minimum.

14. <u>Lost Wages and Benefits</u>. Plaintiff seeks alleged "lost earnings and benefits and future earnings and benefits" relating to his employment allegations. (Compl. ¶ 25) At the time of Plaintiff's alleged termination of employment with GPC in May 2022, Plaintiff was paid at the base rate of $3,541.67 semimonthly (twice per month), which correlates to a rate of $7,083.34 per month, and an annualized rate of $85,000.08. (Clifton Decl. ¶ 4) Not including any employee benefits he claims to have been entitled, this means that Plaintiff's annualized base pay was $85,000.08, at the time of his termination.

15. The Sixth Circuit has held that back pay is properly considered when determining the amount in controversy for diversity purposes. *See Gafford.*, 997 F.2d 150, 160-61 (6th Cir. 1993) (trial court did not err in considering back pay damages when determining amount in controversy); *see also DeWolff v. Hexacomb Corp.*, 2009 WL 237023 at *2-4 (W.D. Mich.) (conducting back pay analysis to meet amount in controversy requirement)

16. When calculating a potential back pay award, federal district courts consider the amount of time that will pass from the filing of the lawsuit until trial. *Epstein v. Target Corp.*, 2007 WL 551552 (N.D. Ill. 2007); *See Davis v. Kindred Nursing Centers East, LLC*, 2006 WL 508802 (S.D. Ohio 2006) (analyzing potential back pay award by determining how long the case will last until trial and using that timeframe for calculating back pay); *Hume v. Quickway Transportation, Inc.*, 2016 WL 3349334, at *3 (W.D. Ky. 2016) (for amount in controversy purposes, back pay includes the estimated time within which trial will occur). In each of the above-cited cases, the courts considered the average time that a civil case takes to go to trial from the time of the filing

of the lawsuit. *See Epstein*, 2007 WL 551552, at *3 (finding that where average time period from the time of filing of complaint to trial was between 26 and 28.4 months, defendant satisfied burden of showing back wages alone satisfied amount in controversy requirement); *see also Davis*, 2006 WL 508802, at *3 ("[B]y the time this case proceeds to trial eighteen months from now, plaintiff could potentially recover between $30,000 and $45,000 in back pay. An award of front pay may also be available); *Hume*, 2016 WL 3349334, at *3 (considering a medial time for a civil case to proceed to trial in a district court within the Sixth Circuit following the filing of a complaint is 26.8 months for purposes of determining back pay in an amount in controversy analysis).

17. Plaintiff's annualized base rate of pay compensation is $85,000.08. (Clifton Decl. ¶ 4) Using even the most conservative estimate of a year from the time of the filing of his Complaint, which is far below the average time to trial from the filing of a Complaint analyzed by courts in the above-cited cases, Plaintiff's back pay alone "could" potentially exceed the $75,000 amount in controversy requirement. Indeed, even calculating back pay based upon a conservative one-year timeframe (from the filing of the case to trial) equates to $85,000.08 (even exclusive of employment benefits). Not even considering the other damages plaintiff seeks, such as front pay, emotional distress, and attorneys' fees, Defendant has satisfied its burden of establishing the amount in controversy requirement has been met by a preponderance of the evidence based on back wages alone.

18. <u>Reinstatement/Front Pay</u>. In his Complaint, Plaintiff also seeks reinstatement to his position with GPC. (Compl. ¶ 26(A)). "[T]he value of Plaintiff's potential reinstatement is properly considered in the amount in controversy calculation." *Estes v. Accretive Health, Inc.*, 2010 WL 3504528, at * 2 (E.D. Mich. 2010). Even when reinstatement may be impractical, plaintiff could recover an award of front pay damages, which is properly included in the amount in controversy

6

analysis. *Shull v. Dynamic Transp., LLC*, 2021 WL 308137, at *2 (E.D. Mich. 2021) (citing *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 923 (6th Cir. 1984)). Front pay is designed "to assist the discharged employee during the transition to new employment of equal or similar status." *Stafford v. Elect. Data Sys. Corp.*, 749 F. Supp. 781, 790 (E.D. Mich. 1990). District courts within the Sixth Circuit have considered a one-year period when analyzing front pay in employment cases for amount in controversy purposes. *See Shaffer v. Brink's U.S.*, 2010 WL 2302355, at *2 (S.D. Ohio 2010) (court considered a one year period for front pay for amount in controversy analysis); *Day v. TA Operating, LLC*, 2020 WL 3086882, at *2 (E.D. Tenn. 2020) (considering defendant's argument that one year of front pay would push the amount in controversy above $75,000); *Jefferson v. Hyatt Corp. of Delaware*, 2015 WL 1611834, at *3 (W.D. Ky. 2015) (including a conservative front-pay award of one year of plaintiff's salary was not unreasonable). Here, when considering a front pay award to Plaintiff representing one year of his annual compensation as in the preceding cases, the amount in controversy for front pay alone is $85,000.08 – well above the minimum amount in controversy threshold of $75,000.

19.     <u>Emotional Distress Damages</u>.  Plaintiff also seeks damages for his alleged mental anguish and emotional distress. (Compl. ¶¶ 25 and 26(B)).

20.     To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts and claims. *See, e.g., Milter v. Wright Med. Grp., Inc.*, 2011 WL 4360024, at *3 (E.D. Mich. 2011); *Leys v. Lowe's Home Centers, Inc.*, 2009 WL 514291, at *4 (W.D. Mich. 2009). Of note, in that regard, jury verdicts in cases where plaintiffs similarly asserted employment retaliation claims as Plaintiff in this case often exceed the $75,000 amount in controversy requirement.  *See, e.g., Khalaf, Ph.D. v. Ford Motor Company; Fowler; Zhou*, 2018 WL 6311783 (E.D. Mich.) (jury awarded plaintiff $16,800,000 on discrimination and retaliation

7

claims in violation of Title VII and the ELCRA related to his allegations that he was retaliated against after filing a complaint with human resources that he was subject to harassment at work); *Sommers Rabedeau v. General Motors Corp.*, 1995 WL 727736 (Mich. Cir. Ct.) (jury awarded plaintiff $215,000 on a claim of retaliation for reporting sexual harassment to the EEOC). Additionally, emotional distress damages alone often exceed the $75,000 amount in controversy requirement in cases similarly alleging retaliation in the employment context. *See, e.g., Sommers-Wilson v. Samsung SDI America, Inc.*, 2019 WL 1238839 (E.D. Mich.) (jury awarded plaintiff $100,000 in noneconomic damages in relation to claims plaintiff was retaliated against in violation of Title VII and the ELCRA after she complained to human resources regarding harassment); *Lensing v. Potter*, 2010 WL 3707401 (W.D. Mich.) (jury awarded plaintiff $300,000 for garden-variety emotional distress damages in relation to her claims that she was discriminated and retaliated against after filing an EEOC complaint); *Khalaf, Ph.D.*, 2018 WL 6311783 (jury awarded plaintiff $100,000 representing damages for garden-variety emotional distress in a case alleging discrimination and retaliation in violation of the ELCRA and Title VII); *Kelmendi v. Detroit Bd. of Education; Detroit Public Schools*, 2016 WL 6649808 (E.D. Mich.) (jury awarded plaintiff $250,000 in noneconomic damages in relation to plaintiff's claims for discrimination and retaliation in violation of Title VII, the ADEA and the ELCRA). These awards demonstrate that, for diversity purposes, the amount in controversy with respect to the emotional distress aspect of Plaintiff's claimed damages far exceeds the $75,000 requirement on its own. These cases demonstrate that Plaintiff's claim for emotional distress alone puts the amount in controversy well above the jurisdictional threshold.

21. <u>Attorney's Fees</u>.  Plaintiff seeks unspecified attorneys' fees for his ELCRA claim. Here, the ELCRA expressly allows the payment of reasonable attorneys' fees when a court renders

judgment in an action brought pursuant to the ELCRA. MI ST § 37.2802. As such, these amounts are included in the amount in controversy. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). Because fee awards in Michigan employment retaliation cases can, and sometimes do, exceed $75,000 by themselves, this too shows the amount in controversy could exceed $75,000. *See LeClear v. City of Grand Rapids*, 2004 WL 3929941 (W.D. Mich. 2004) (jury awarded plaintiff $1,275,000 in attorneys' fees in relation to employment discrimination and retaliation claims); *Berk v. Lincare Inc.*, 2003 WL 25694757 (W.D. Mich. 2003) (plaintiff was awarded $166,978 in attorneys' fees in relation to employment retaliation and wrongful termination claims); and *McBurrows v. MI Dep't of Transp.*, 2005 WL 6038070 (W.D. Mich. 2005) (jury awarded plaintiff $27,425 in attorneys' fees in relation to discrimination and retaliation claim for reporting unlawful employment activities). As evidenced by the foregoing, potential attorneys' fees in this case alone satisfies the amount in controversy requirement. Factoring in the potential attorneys' fees award with the other damages claimed above, Defendant has satisfied its burden of establishing by a preponderance of the evidence that awards "could" well exceed $75,000 for each individual category of damages, and combined the amount in controversy in this case far exceeds the $75,000 threshold.

22. Based on the foregoing, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Indeed, as demonstrated above, backpay and front pay, based on even one-year assessments result in a potential combined award of $170,000.16, exclusive of employment benefits, which would also be added, and to which emotional distress and attorneys' fees would further be added.) Accordingly, GPC desires and is entitled to have this case removed from the Circuit Court for the County of Kent, State of Michigan to the United States District Court for the Western District of Michigan pursuant to the provisions of 28 U.S.C. § 1446(b).

23.     By filing this Notice and Petition of Removal, GPC does not concede that Plaintiff is entitled to any of the damages/relief pled, including those damages referenced herein. To the contrary, the damages referenced herein are those which are alleged in connection with Plaintiff's Complaint to be "in controversy."

24.     By filing this Notice and Petition of Removal, GPC has not and does not waive any defenses it might assert or its right to bring any application anywhere in relation to this litigation or its subject matter.

25.     GPC reserves the right to provide additional/supplemental evidence regarding the amount in controversy.

WHEREFORE, GPC prays that the above captioned action now pending against it in the Circuit Court for the County of Kent, State of Michigan be removed to this Court on the basis of diversity jurisdiction and this Court accept jurisdiction of this action in its entirety and henceforth that this action be placed on the docket for the Court for further proceedings, the same as though this action originally had been instituted in this Court.

Dated: August 30, 2022            Respectfully submitted,

*/s/ Courtney L. Nichols*
Courtney Nichols (P75160)
PLUNKETT COONEY
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4000
Fax: (248) 901-4040
cnichols@plunkettcooney.com

-and-

Lisa M. Szafranic
(*pro hac vice* application forthcoming)
lmszafranic@martensonlaw.com
David V. Carson
(*pro hac vice* application forthcoming)

10

dcarson@martensonlaw.com
MARTENSON, HASBROUCK, & SIMON LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30319
Telephone: (404) 909-8100
Facsimile: (404) 909-8120

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 30, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which automatically sends notice of the filing to Plaintiff's counsel of record. The foregoing document is also being served by U.S. Mail First Class to Plaintiff's counsel of record:

Sarah Riley Howard
Crystal J. Bultje
PINSKY, SMITH, FAYETTE & KENNEDY, LLP
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
showard@psfklaw.com
cbultje@psfklaw.com

*/s/ Gina Amesse*
*Gina Amesse*

Open.P1078.P1078.29514939-1